**2422-CC00690**

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

### IN THE CIRCUIT COURT FOR ST LOUIS CITY
### MISSOURI STATE COURT

| | |
|---|---|
| **CECIL BRINKER,**<br>*individually and on behalf of*<br>*all others similarly situated,* | ) <br> ) <br> ) <br> ) <br> ) |
| **Plaintiffs,** | ) <br> ) |
| **v.** | ) <br> ) |
| **THE KRAFT HEINZ FOODS COMPANY,**<br> and DOES 1 through 10, | ) <br> ) <br> ) |
| **Defendants.** | ) |

EXHIBIT

1

**Case No. _____**

**JURY TRIAL DEMANDED**

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Cecil Brinker, individually and on behalf of all others similarly situated, hereby files this Class Action Complaint, against The Kraft Heinz Foods Company, and DOES 1 through 10 (collectively "Defendants") for their false, misleading, and deceptive marketing of their products constituting breach of warranty, breach of implied contract, and unjust enrichment, and, in the state of Missouri, violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

1.    Defendant markets and sells consumer products, including microwaveable and non-microwaveable Kraft Mac & Cheese products that have packaging which prominently display on the front of the label that the products contain "No Artificial Flavors, Preservatives, or Dyes," but nonetheless contain citric acid – a well-known synthetic preservative in food (collectively, the "Products").[1]

---

[1] "Products" includes all microwaveable and non-microwaveable Kraft Mac & Cheese products labeled as containing "No Artificial Flavors, Preservatives, or Dyes" that include citric acid as an ingredient. The Products include, but are not limited to microwaveable Kraft Mac & Cheese Original Flavor, microwaveable Kraft Mac & Cheese spirals.  In addition, the non-microwaveable versions of Kraft Mac & Cheese also bear the false "No preservatives" claims and are included herein as "Products." Those products include Kraft Mac & Cheese Original Flavor, Kraft Mac & Cheese Thick 'n Creamy, and Kraft Mac & Cheese Three Cheese.

1

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

2.    Because of the presence of citric acid which functions as a preservative in the Products, the claim "No Artificial Flavors, Preservatives, or Dyes," is false.

3.    An example of the Products' packaging, prominently stating the "No Artificial Flavors, Preservatives, or Dyes" false claim, is depicted below:

 



4.    Although prominently claiming that the Products contain "No Artificial Flavors,

2

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

Preservatives, or Dyes," the fine-print ingredients reveal that the Products all contain citric acid, which (unbeknownst to the reasonable consumer) is a well-known synthetic preservative used in food products.

5.    Nonetheless, despite the Products containing the known preservative citric acid, Defendants' claim they have "No Preservatives" to appeal to consumers who expect a premium product free from preservatives.

6.    For all these reasons – and those set forth further below – representing that the Product has "No Artificial Flavors, Preservatives, or Dyes" is false, misleading and deceptive.

7.    Pursuant to the MMPA, such practice is illegal.

8.    In addition, and/or in the alternative to the above, since the initial offering of the Products, each and every container of the Products has borne a uniformly-worded label falsely claiming the Products contain "No Artificial Flavors, Preservatives, or Dyes." That uniformly-worded false statement gives rise to additional and/or alternative claims under Missouri law.

## I.    PARTIES, JURISDICTION, AND VENUE

9.    Plaintiff Cecil Brinker is a citizen and resident of St. Louis, Missouri.

10.    Plaintiff brings this Class Action Complaint individually and on behalf of a putative class of Missouri residents, and/or a putative subclass of consumers from certain states, the "Consumer Protection Subclass."

11.    Defendant The Kraft Heinz Foods Company ("Kraft") is a Delaware corporation having its principal place of business at One PPG Place, Pittsburgh, Pennsylvania, 15222. Kraft may be served through its registered agent located at CT Corporation System, 120 S. Central Ave., Clayton, MO 63105.

12.    The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged

3

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

herein. If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

13.     Defendants, directly and through their agents, have substantial contacts with, and receive substantial benefits and income from and through the State of Missouri. Defendants are the owners, manufacturers, and distributors of the Products, and the entities that created and/or authorized the false, misleading, and deceptive packaging of the Products.

14.     Venue is proper in this Court because Plaintiff was injured in this venue and lives within this venue.

15.     This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA. Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable. This action raises questions of law and fact common among Plaintiffs. The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys qualified to pursue this action. More specifically:

16.     Class definitions:  Plaintiff brings this action on behalf of Plaintiff and a class of similarly-situated persons preliminarily-[2]defined as follows: All persons who purchased the Products[3] during the Class Period while in one of the specific states listed *infra* having consumer protection statutes materially-identical to the MMPA ("Consumer Protection States").  In addition, and/or alternatively, Plaintiff brings this action on behalf of herself and a Missouri subclass of similarly-

---

[2] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification. Included within this reservation is a potential subclass of those citizens in those states having consumer protection laws materially-similar to the MMPA, set forth *infra*.  Each state therein has a consumer protection statute that broadly prohibits deceptive conduct; likewise, no state requires proof of individualized reliance, or proof of Defendant's knowledge or intent. Thus, Defendant's conduct alleged herein violates each statute's shared prohibitions.

[3] As that term and label is defined herein.

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

situated persons defined as follows: All persons, who, within the Class Period, purchased the Products in the State of Missouri.  The Class Period begins five years prior to the date of the filing of this Petition, and ceases upon the date of the filing of this Petition. Excluded from the Class and Subclass are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

17.     Numerosity:  Upon information and belief, the Class and Subclass includes at least tens-of-thousands of individuals on a multiple-state basis, making their individual joinder impracticable. Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are ascertainable from Defendants' records.

18.     Typicality: Plaintiff's claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, using misleading and deceptive marketing and advertising in offering and selling the Products to Plaintiffs.

19.     Adequacy:  Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class members Plaintiff seeks to represent, Plaintiff has retained competent and experienced counsel, and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be protected fairly and adequately by Plaintiff and his counsel.

20.     Commonality:  Common questions of law and fact exist as to all Class members and

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

predominate over any questions affecting only individual members, such as: (a) whether the Defendant used deceptive or misleading marketing and advertising in selling the Products; (b) whether and to what extent the Class members were injured by Defendant's illegal conduct; (c) whether the Class members are entitled to compensatory damages; (d) whether the Class members are entitled to declaratory relief; and (e) whether the Class members are entitled to injunctive relief.

21.    <u>Superiority</u>:  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct.  Thus, it would be extremely difficult for the individual Class members to obtain effective relief.  A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

## PLAINTIFF'S CLAIMS

22.    Because the Products all contain citric acid, a well-known preservative, the Products' "No Artificial Flavors, Preservatives, or Dyes" claim is false, misleading and deceptive, all in violation of the Missouri Merchandising Practice Act, and various other Missouri and similar–state consumer laws.

23.    Average and reasonable consumers such as Plaintiff generally do not read the fine print on the rear or side of a package when purchasing the Products.  Moreover, although it is well-established scientifically (and in the various other manners set forth *infra*), the reasonable consumer does not recognize citric acid as a preservative.

24.    Plaintiff and other consumers purchased the Products due to their belief that the Products have "No Artificial Flavors, Preservatives, or Dyes."

25.    Indeed, as shown *supra,* that statement is prominently advertised on the Products'

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

packaging:



26.     Plaintiff and the Class made their purchasing decisions in reliance upon Defendant's advertised claims that the Products contain "No Artificial Flavors, Preservatives, or Dyes."

27.     Plaintiff and the Class reasonably and detrimentally relied upon the Products' front labels in this respect.

28.     This is especially true in light of the fact that the average consumer spends less than 20 seconds making any individual in-store purchasing decision.[4] Indeed, most consumers shop in a relatively hurried fashion, and cannot stop to closely analyze every single product to decipher every deception.[5]

29.     Under these circumstances, the prominent, attention-grabbing "front-of-the-box" claim

---

[4] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN (Jan. 13, 2015), https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-windown/ (citing *Shopping Takes Only Seconds... In-Store and Online*, EHRENBERG-BASS INSTITUTE OF MARKETING SCIENCE (2015)) (last visited May 14, 2023).

[5] *See, e.g., Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 481 (7th Cir. 2020) (stressing that reasonable consumers, in purchasing "everyday" items such as "low-cost groceries," are likely to exhibit a low degree of care); *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019) ("[A] parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow, is not likely to study with great diligence the contents of a complicated product package, searching for and making sense of fine-print disclosures . . . . Nor does the law expect this of the reasonable consumer.").

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

that the Product contains "No Artificial Flavors, Preservatives, or Dyes" is the only thing noticed by a harried consumer rushing through their shopping routine. Plaintiff and the Class would not have purchased the Products had they known that the Products' claim of "No Artificial Flavors, Preservatives, or Dyes," was in fact false. Unfortunately, however, buried in the fine-print ingredient boxes on the back of each Product is the revelation that the Products all contain citric acid:

Microwaveable "Spirals": 

Microwaveable "Original Flavor": 

"Three cheese": 

"Original flavor": 

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM



"Thick 'n Creamy":

30.    Citric acid, while non-toxic and permitted as an additive, is indisputably a synthetic preservative, being categorized as such by essentially every single governmental, scientific, and academic institution considering the question.

### Citric Acid Is a Synthetic Preservative

31.    Citric acid is a synthetic, non-natural ingredient. Commercial food manufacturers, such as Defendant, use a synthetic form of citric acid that is derived from heavy chemical processing.[6]

32.    While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but is industrially manufactured by fermenting certain genetically modified strains of the black mold fungus, *Aspergillus niger*.[7] Defendant uses synthetic manufactured citric acid in the Products, sourced from *aspergillus niger*.

33.    The Food and Drug Administration ("FDA"), which has primary authority to establish labeling requirements for foods and food ingredients under its purview pursuant to the FDCA,[8] has identified citric acid as being a synthetic ingredient.

---

[6] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/

[7] *Id*; Pau Loke Show, *et al.*, *Overview of citric acid production from Aspergillus niger*, FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), *available at* https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653 *see also*, Belen Max, et. al., *Biotechnological Production of Citric Acid*, Brazilian Journal of Microbiology, 41.4 Sao Paolo (Oct./Dec. 2010).

[8] 21 U.S.C. § 301, *et. seq.*

34.     As just one example, the FDA's classification of citric acid as a synthetic ingredient is confirmed by its warning letter, date October 29, 2001, to Hirze Canning Company ("Hirtzel") regarding its canned tomato products. *See* **Exhibit B**.  Therein, the FDA stated that these products could not bear an "all natural" claim on the label because the products contained a synthetic ingredient, citric acid.

35.     Specifically, the letter states, in pertinent part:

> [A]ccording to the ingredients statements ... citric acid are added to the products ... FDA's policy regarding the use of "natural" means that nothing artificial or synthetic has been included, or has been added to, a food that would not normally be expected to be in the food. Therefore, *the addition of ... citric acid to these products preclude the use of the term "natural" to describe this product*."

Exhibit B (emphasis added).

36.     Because the Hirzel products contained a synthetic ingredient (citric acid), preventing the products from bearing a "natural" claim, the FDA informed Hirzel that the products were misbranded. In short, the FDA clearly designates citric acid as artificial and synthetic.

37.     Similarly, on August 16, 2001, the FDA sent Oak Tree Farm Dairy, Inc. ("Oak Tree"), a warning letter regarding its "Oaktree Real Brewed Ice Tea," and other products. *See* **Exhibit C**.  With respect to the Ice Tea product, the FDA stated that the product could not bear "100% Natural" and "All Natural" claims on the label because the product contained a synthetic ingredient, citric acid.

38.     Specifically, the letter states, in pertinent part:

> "[t]*he term "all natural"* on [a separate product] *is inappropriate* because the product contains sodium sorbate ... FDA's policy regarding the use of "natural" means that nothing artificial or synthetic has been included, or has been added to, a food that would not normally be expected to be in the food.  The same comment applies to the use of the terms "100% Natural" and "All Natural" on the [Ice Tea product] *because it contains citric acid.*

Exhibit C, (emphasis added).

39.     As the above makes clear, the FDA and many other sources have repeatedly recognized citric acid added to food product is synthetic and artificial.  So too have countless sources recognized

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

that it necessarily functions as a preservative.

40.     Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[9]

41.     · Citric acid acts as a preservative when added to food products, including the Products at issue. This is true regardless of its intended use.   The FDA defines a preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5). The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[10]

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
| --- | --- | --- | --- |
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

42.     As shown, under the "What they Do" table heading, the FDA states that preservatives help "prevent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness."

43.     Indeed, the FDA warned companies broadly, well over a decade ago, that citric acid is a preservative.   This fact has been settled for quite a while.   In a 2010 warning letter sent to Chiquita

---

9 Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL. REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

10 *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[11]

44.     Around the same time, in April of 2010, the International Food Information Council ("IFIC"), acting in conjunction with the FDA, issued a public bulletin informing consumers wanting to avoid preservatives to check if the food's ingredients include the chemical additives of "[a]scorbic acid [and] citric acid," which the IFIC and FDA designate as a *preservative.*"[12]:



45.     Citric acid has antioxidant and antimicrobial properties.  Citric acid acts as an antioxidant via two processes via two processes—inhibiting enzymes and chelating metals.  Certain enzymes naturally exist in food products that oxidize and breakdown the food products' molecules.  Citric acid deactivates these enzymes, thereby functioning as a preservative.[13]  Citric acid also chelates metal ions, which stabilizes and preserves food products by bonding certain molecules in food products to centrally located metal atoms.[14]

46.     The Encyclopedia Britannica also classifies citric acid as a preservative because it has antioxidant properties, as illustrated below:[15]

---

[11] *See* **Exhibit A** attached hereto.
[12] IFIC and FDA, April 2010 Bulletin: "Overview of Food Ingredients, Additives & Colors, at pp. 2-3, available at: https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf
[13] *Id.*
[14] P. Davidson et al., *Chapter 20: Antimicrobial Agents*, in FOOD ADDITIVES, at 592 (A. Larry Branen et al. eds., Marcel Dekker, Inc. 2d ed. 2002).
[15] *Preservatives*, BRITANNICA, *available at* https://www.britannica.com/topic/food-additive/Preservatives#ref502211

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

## Preservatives

Food preservatives are classified into two main groups: antioxidants and antimicrobials. Antioxidants are compounds that delay or prevent the deterioration of foods by oxidative mechanisms. Antimicrobial agents inhibit the growth of spoilage and pathogenic microorganisms in food.

| Food preservatives | |
| --- | --- |
| chemical agent | mechanism of action |
| Antioxidants | |
| ascorbic acid | oxygen scavenger |
| butylated hydroxyanisole (BHA) | free radical scavenger |
| butylated hydroxytoluene (BHT) | free radical scavenger |
| citric acid | enzyme inhibitor/metal chelator |

47.     In addition to its antioxidant properties, citric acid also has antimicrobial properties and directly inhibits the growth of some bacteria and mold.[16] This is another, independent reason why food scientists classify citric acid as a preservative.[17]

48.     The Agricultural Marketing Service of the United States Department of Agriculture ("USDA") has also recognized the use of citric acid as a preservative stating that "Citric acid has a wide variety of uses, some of which can provide preservative functions, primarily though lowering the pH of the food."[18]

49.     The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "[s]ome common chemical preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[19]

50.     In addition, several academic journals also note the use of citric acid as a preservative.[20]

---

[16] L. Su et al., *Study on the Antimicrobial Properties of Citrate-Based Biodegradable Polymers*, FRONTIERS IN BIOENGINEERING AND BIOTECHNOLOGY, 2, 23. https://doi.org/10.3389/fbioe.2014.0002
[17] *Citric Acid Compound Summary*, NAT'L CTR. FOR BIOTECHNOLOGY INFO., https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid.

[18] *Citric Acid and Salts*, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf.

[19] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf

[20] K. Kirimura, et al., *Citric Acid*, COMPREHENSIVE BIOTECHNOLOGY (SECOND EDITION) (2011), *available*

13

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

In fact, "[C]itric acid acts as a preservative in many processed foods; keeping them fresh. It does this by slowing or helping prevent the formation of bacteria, mold, yeast, and fungus."[21] "Today, citric acid is one of the most common and widely-used preservatives in the world[.]"[22]

### *Citric Acid Necessarily Functions as a Preservative in the Products*

51. It is *not* necessary that the citric acid in the Products function as a preservative for the "no preservative" claim to be false. Nonetheless, the citric acid functions as a preservative in the Products regardless of whether Defendant intended to use citric acid as a preservative or as flavor enhancer.

52. Citric acid functions as a preservative even if it is also added to the Products for some other use. *See* 21 C.F.R. § 101.22(a)(5)(defining preservatives as "any chemical that, when added to food, *tends to* prevent or retard deterioration")(emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or *has the power of preserving*.")(emphasis added);[23] Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or *capable* of preserving").[24]

53. Indeed, subjective intent of citric acid use is irrelevant. Citric acid functions as a preservative in the Products, and this is true regardless of Defendant's subjective purpose or intent for

---

*at* https://www.sciencedirect.com/science/article/abs/pii/B9780080885049001690?via%3Dihub; K.M.S. Islam, *Use of citric acid in broiler diets,* WORLD'S POULTRY SCIENCE JOURNAL VOL. 68, ISSUE 1 (Feb. 21, 2012), *available at* https://www.cambridge.org/core/journals/world-s-poultry-science-journal/article/abs/use-of-citric-acid-in-broiler-diets/DA15C2C1F90667525BF2414DF3BFF646 ("Citric Acid (CA) is a weak organic acid which is a natural preservative and can add an acidic or sour taste to foods and soft drinks.").

[21] *What is citric acid, and what is it used for?,* MEDICAL NEWS TODAY (July 23, 2021), *available at* https://www.medicalnewstoday.com/articles/citric-acid

[22] *Citric Acid: One of the Most Important Preservatives in The World,* FBC INDUSTRIES, INC. (Feb. 5 2019), *available at* https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/

[23] *Preservative,* MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld

[24] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative.

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

adding it to the Products, such as to impart flavor.[25]

54.    In addition to all of the above reasons establishing that citric acid is a preservative, the following points also cement this understanding and show how citric acid necessarily functions as a preservative in the Products.  The following points also illustrate why Defendant's purported intended use of citric acid is completely irrelevant.  Regardless of intended uses, citric acid *necessarily* and *unavoidably* tends to, has the power to, and is capable of acting as a preservative.

    a.  Because citric acid lowers the PH of food, it helps to create an acidic environment that inhibits the growth of microorganisms, thereby acting as a preservative.[26]

    b.  As noted, citric acid also has an antioxidant effect, which prevents oxidation and spoilage of food products, and thereby acts as a preservative in this manner as well.[27]

    c.  Citric acid also promotes antimicrobial activity, such that it also prevents the growth of bacteria, molds, and yeasts in food products, thus acting as a preservative.[28]

    d.  Citric acid also has chelating properties, so that it can bind to metal ions, such

---

[25] *Citric Acid* in KIRK-OTHMER FOOD & FEED TECH., at 262 (John Wiley & Sons, 2007); L. Somogyi, *Chapter 13: Direct Food Additives in Fruit Processing,* in PROCESSING FRUITS: SCI. & TECH., at 302 (D. Barrett et al. eds., CRC Press 2d ed. 2004); M. Abd- Elhady, *Effect of citric acid, calcium lactate and low temperature prefreezing treatment on the quality of frozen strawberry,* 59 ANNALS OF AGRIC. SCIS., 69-75 (2014); J. deMan, *Chapter 11: Additives and Contaminants,* in PRINCIPLES OF FOOD CHEMISTRY, at 438 (AVI Publishing Co., Inc. 3d ed. 1999) ("Acids as food additives serve a dual purpose, as acidulants and as preservatives.").

[26] *See, e.g.,* ECHEM.COM "Is Citric Acid a Preservative: A Complete Guide, June 8, 2023, available at https://www.echemi.com/cms/1416389.html

[27] *See, e.g.,* Medical News Today, "What is citric acid, and what is it used for?", July 23, 2021, available at: https://www.medicalnewstoday.com/articles/citric-acid

[28] *See, e.g.,* NIH, National Library of Medicine, C. Burel "Impact of pH on citric acid antimicrobial activity against Gram-negative bacteria," Nov. 22, 2022, available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7984346/

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

as iron and copper, which are involved in catalyzing oxidative reactions that lead to food spoilage. As such, it acts as a preservative in this additional manner.[29]

e.  Citric acid can also help retain moisture in products, thereby reducing the risk of microbial growth due to water availability – yet one more fashion in which citric acid acts as a preservative.

f.  Citric acid also has a direct affect as a mold inhibitor, making it an effective preservative for this addition reason.[30]

55.  In addition, and perhaps most importantly, while citric acid can also be employed by a manufacturer that intends to impart taste, ***a greater quantity of citric acid is required to impart taste than to preserve foods***.[31] The preservative effects of this acid may be reduced at lower levels, but it will still be present.

56.  Thus, Defendant cannot argue that it includes citric acid in the Products merely to impart taste, because the quantities required to impart taste are more than sufficient to function as a preservative. Even if imparting taste is Defendant's primary intention for including citric acid, that subjective motivation has no bearing on its objective functioning.

57.  For all of the above–stated reasons, and more, it is clear that citric acid is a preservative, regardless of what its intended or subjective use is in the Products is claimed to be. Moreover, even if citric acid's function as a preservative in the Product were somehow otherwise negated or counteracted (which is not apparent here), the "No Artificial Flavors, Preservatives, or Dyes" label is nonetheless

---

[29] *See, e.g.,* ScienceDirect, "Rancidity, Impact of particle size and other ingredients on extrude foods and feeds,'" Mian N. Riaz, 2012, available at: https://www.sciencedirect.com/topics/agricultural-and-biological-sciences/rancidity

[30] *See, e.g.,* NIH, National Library of Medicine, Musyoka, Joyce, "Effects of acidification and preservatives on microbial growth during storage of orange fleshed sweet potato puree.", June 7, 2018, available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6011086/

[31] *See, e.g.,* Sweis, Illiani, fn. 9, *supra.*

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

false.

58.    In short, the mere inclusion of citric acid in the Product, regardless of any other excuse or explanation created by Defendant, renders the "No Artificial Flavors, Preservatives, or Dyes" label false.

***Reasonable Consumers are Deceived by Defendant's False Labeling***

59.    Consumers, like Plaintiff, relied on Defendant's "No Artificial Flavors Preservatives, or Dyes" labeling statement. The "No Artificial Flavors, Preservatives, or Dyes" statement on the labels of the Products is material to reasonable consumers. "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims "free-from" consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent).[32]

60.    According to another study, when consumers were asked to choose a product that was the closest to their understanding of what "natural" means on product labels, on balance, they chose products with "No Preservatives" labels.[33]

61.    In yet another study, the consumers spoke loud and clear in pointing out that a product having "no preservatives" is specifically sought after by a full 67% of consumers, topped *only* by "no artificial ingredients" at 69% (see excerpt below):[34]

---

[32] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, Mintel (Sept. 3, 2015), *available at* https://www.mintel.com/press-centre/84-of- americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/

[33] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896. (2020).

[34] LEK Consulting, Executive Insights; Steingoltz, Maria, *et. al.,* "Consumer Health Claims 3.0: The Next Generation of Mindful Food Consumption," 2018, available at: https://www.lek.com/sites/default/files/insights/pdf-attachments/2051-Healthy-Food-Claims.pdf

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

Executive Insights



Figure 2
U.S. consumer committed* or casual** purchasing frequency by food claim¹

*Defined as purchased frequently or always
**Defined as purchased occasionally
Source: L.E.K. Consumer Survey and analysis

62.    Clearly, consumers are overwhelmingly concerned with having "no preservatives," and strongly prefer healthy food products. *Id.* And this trend is only increasing, as the global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[35]

63.    Defendant's conduct threatens Missouri consumers by using false, deceptive, and misleading labels. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition, has a negative impact on the marketplace, and reduces consumer choice.

64.    There is no practical reason for the false or misleading labeling and advertising of the Products, other than to mislead consumers as to the actual nature of the Products, while simultaneously providing Defendant with a financial windfall.

### *Allegations Relating to All Plaintiffs*

65.    As noted, *supra,* since the initial offering of the Products, the containers on the front

---

[35] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025,* https://www.hospitalitynet.org/news/4108643.html.

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

packaging of all of the Products has borne one or more uniformly-worded labels falsely claiming the Products contains "No Artificial Flavors, Preservatives, or Dyes" (hereinafter "False Claims").

66.     In reality, for all the reasons set forth *supra,* a reasonable consumer would find that the False Claims are false, misleading, unfair, and/or deceptive.

67.     Defendant, as developer, manufacturer, and exclusive seller and distributor of the Products, has been aware since the Products' inception, that the False Claims are in fact false.

68.     Indeed, Defendant undoubtedly did its own investigation of the Products and its marketplace prior to it being offered for sale and, of necessity, such investigation would have made Defendant aware that the False Claims are in fact false.

69.     Despite this, Defendants purposely made the False Claims in order to induce the false belief in consumers that they were purchasing a Product that had "No Artificial Flavors, Preservatives, or Dyes."

70.     Plaintiff and the class members purchased the Products without being aware that the Products in fact contain a preservative.

71.     Defendant possessed specialized knowledge regarding the data and information concerning the Products and its claims.

72.     In purchasing the Products, Plaintiff and the class members had no choice but to necessarily and justifiably rely upon the False Claims as accurate.

73.     Had Plaintiff known that the False Claims were false, Plaintiff would not have purchased the Products or would not have paid as much for the Products.

74.     If, at some point in the future, the Product was improved to actually have "No Artificial Flavors, Preservatives, or Dyes." and/or otherwise be accurately labeled, Plaintiffs intend to, and will purchase the Products again.

75.     As the direct and proximate result of the False Claims, Plaintiff and the class members

19

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

have suffered economic injury by being deprived of the benefit of the bargain they were promised by Defendant.

76.     By marketing, selling and distributing the Product to purchasers in Missouri and elsewhere, Defendant made actionable statements that the Products contained "No Artificial Flavors, Preservatives, or Dyes."

77.     Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

78.     Alternatively, Defendant was reckless in not knowing that the False Claims were false and misleading at the time they were made.

79.     As the distributor, marketer, producer, manufacturer, and seller of the Products, Defendant possessed specialized knowledge regarding the data and information concerning the amount of Product which the Plaintiff and the class members could not and did not review.

*Facts Particular to Named Plaintiff*

80.     In or around January 21, 2024, Plaintiff purchased one of the non-microwaveable Products from a third-party retailer, Walmart Supercenter, located at 1900 Maplewood Commons Dr., Maplewood, Missouri, 63143.

81.     In addition, on or around February 25, 2024, Plaintiff purchased two of the microwaveable Products from a third-party retailer, also the Walmart Supercenter, located at 1900 Maplewood Commons Dr., Maplewood, Missouri, 63143.

82.     Due to the claims on the packaging, at each purchase, Plaintiff falsely believed Plaintiff was purchasing a product that contained "No Artificial Flavors, Preservatives, or Dyes."

83.     Plaintiff thereafter purchased the Products. Plaintiff purchased the Product primarily for Plaintiff's personal, family and household use.

20

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

84.    At the time Plaintiff purchased the Products, Plaintiff was unaware of the falsity of the Products' claims.

85.    Plaintiff discovered that such claims were false only after having purchased and used (ingesting) the Products, which Plaintiff used and prepared properly and according to its instructions in every respect.

86.    If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Products, Plaintiff would not have bought the Product.

87.    When Plaintiff purchased the Products, Plaintiff was injured by Defendant's illegally deceptive, false, and misleading conduct in marketing and selling the Product.

88.    Specifically, Plaintiff suffered an ascertainable loss because Plaintiff did not receive the expected benefit of the bargain.

89.    When Plaintiff was purchasing the Product, due to the false claims upon the Product, Plaintiff believed that Plaintiff was receiving a product that contained "No Artificial Flavors, Preservatives, or Dyes."

90.    The Product was not what it was purported to be.  Plaintiff did not receive the value of what Plaintiff bargained for; instead Plaintiff received a product that did not live up to one of its most-prominently advertised benefits – containing no preservatives.  Plaintiff did not want a Product with preservatives.

91.    Consequently, Plaintiff was damaged in the amount of the difference between the cost paid for the Products as represented – as one that contained "No Artificial Flavors, Preservatives, or Dyes," and the actual value of the Products to consumers seeking products without preservatives.

92.    Plaintiff desires to, and will purchase the Products again if they are honestly-labeled in respect to the ingredients within, but faces an imminent threat of harm because Plaintiff will not be able to rely on Defendant's labels in the future (without relief) and will thus be unable to purchase the

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

Products.

93.     Although the aforementioned facts apply to named Plaintiff, for purposes of the proposed Class, all that is relevant is that Plaintiff and the class members purchased the Products at a time within the Class Period while in Missouri and/or one of the Consumer Protection States.

***Plaintiffs Claims Are Not Preempted***

94.     Any claim of "preemption" by Defendant would be misplaced.  Plaintiffs' claims are not preempted by the FDCA because the definition of "preservative," as used herein, is identical with that of the FDA (see above).

95.     Moreover, FDA regulations specifically note that claims like "No Preservatives" are non-nutritive claims that are not governed by 21 C.F.R. §101.13. *See* 21 C.F.R. § 101.65(b)(2).

96.     *A fortiori,* since the FDA has never issued specific standards governing when "No Preservative" claims are either true or false, such representations fall outside the ambit of FDA regulations. And even if, *arguendo,* they did not fall outside FDA regulations (which they do), Plaintiff's claims are *consistent* with FDA regulations.

97.     Accordingly, Plaintiffs' claim cannot possibly be preempted.

## CAUSES OF ACTION

### COUNTS RELATING TO THE MISSOURI AND CONSUMER PROTECTION SUBCLASSES

### COUNT ONE: BREACH OF WARRANTY

98.     Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Class Action Petition.

99.     Defendant sold the Product in its regular course of business.  Plaintiff and the class members purchased the Product.

100.     Defendant made promises and representations in an express warranty provided to all consumers, namely the False Claims.

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

101.     The False Claims became the basis of the bargain between the Defendant and Plaintiff and each class member.

102.     Defendant gave these express warranties to Plaintiff and each class member in written form on the labels of the Product.

103.     Defendant's written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty under Missouri law and the laws of the Consumer Protection States.

104.     Defendant breached the warranty because the False Claims were false; the Product are not ones that contained "No Artificial Flavors, Preservatives, or Dyes."

105.     The False Claims were false when the sales took place and were undiscoverable to Plaintiff and the class members at the time of purchase.

106.     All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff and the class in terms of paying for the Product.

107.     Defendant had actual notice of the false labeling information and to date has taken no action to remedy its breach of express and implied warranty.

108.     Specifically, counsel for Plaintiff mailed a previous copy of this lawsuit to Defendant on March 27, 2024, providing Defendant with written notice of this breach of warranty. In addition, on April 12, 2024, Plaintiff provided Defendant with a copy of this precise lawsuit, including Notice as to the non-microwaveable products. Defendant has not meaningfully responded, and has taken no action to remedy its breach of express and implied warranty.

109.     In addition, Defendant previously knew or should have known of the falsity of the False Claims on the Product due to, *inter alia*, Defendant's knowledge of the Product.

110.     Defendant has nonetheless refused to remedy such breaches.

111.     By placing the Product in the stream of commerce, and by operation of law and the facts

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

alleged herein, Defendants also impliedly warrantied to Plaintiff and the class members that the Products were accurately labeled in conformance with the law.

112. Defendant's breaches of warranty have caused Plaintiffs and class members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and class members have suffered damages and continue to suffer damages.

## COUNT TWO: BREACH OF IMPLIED CONTRACT UNDER MISSOURI LAW

113. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

114. By operation of law, there existed an implied contract for the sale of the Product between Defendant and Plaintiff and each class member who purchased the Product.

115. By operation of Missouri law, there existed an implied duty of good faith and fair dealing in each such contract.

116. By the acts alleged herein, Defendant has violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and each class member.

117. As stated, despite claiming to contain "No Artificial Flavors, Preservatives, or Dyes," the Products all contain citric acid, which is indisputably a preservative.

118. As a result of that breach, Plaintiff and each class member suffered damages.

## COUNT THREE: UNJUST ENRICHMENT UNDER MISSOURI LAW

119. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

120. Plaintiffs plead their claim for relief in the alternative to the contract claims set forth above.

121. Plaintiff and the class members have conferred substantial benefits on Defendant by

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

purchasing the Product, and Defendant has knowingly and willfully accepted and enjoyed those benefits.

122.    By purchasing the Product, Plaintiff conferred a benefit upon Defendant in that Defendant ultimately received funds from the transaction, initially provided by Plaintiff.

123.    Upon information and belief, Defendant directly profits from Plaintiff's purchase in such a manner.

124.    Accordingly, Defendant was unjustly enriched by Plaintiff and those similarly-situated.

**COUNT FOUR: VIOLATION OF THE MMPA & OTHER CONSUMER PROTECTION LAWS**

125.    Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Petition, as though fully set forth herein.

126.    Defendant's acts complained of herein occurred in and emanated from the State of Missouri and/or one of the Consumer Protection States.

127.    Plaintiff and all members of the Class are "persons" and the Product is "merchandise" as those terms are defined under the MMPA.

128.    As set out in this Petition, Defendant's marketing and sale of the Product constitutes deception, false pretense, misrepresentation, unfair practice, or, at a minimum, the concealment, suppression, or omission of a material fact in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA"). The statement "No Artificial Flavors, Preservatives, or Dyes," is false, deceptive, and misleading; and Defendant's overall practice is certainly "unfair."

129.    As a result of Defendant's actions, consumers, including Plaintiff, were misled or deceived that the Product they were purchasing contained "No Artificial Flavors, Preservatives, or Dyes."

130.    In being misled in the manner described herein, Plaintiff was at all times acting as a reasonable consumer would in light of the circumstances.

131.    The deceptive practice Defendant engaged in would cause a reasonable person to enter

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

the transaction described herein, which resulted in damages to Plaintiff.

132.    Defendant's deceptive acts caused Plaintiff and the Class Members an ascertainable loss within the meaning of the MMPA. The cost of the Products to consumers can be calculated, and the value of the Products to consumer seeking products without preservatives is nothing. Accordingly, damages can be proven with objective and sufficiently definitive evidence.[36]

133.    Due to Defendant's illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

134.    Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

135.    For all of the same reasons set forth above, Defendants' conduct also violates the materially-similar consumer protection laws of the Consumer Protection Subclass.

136.    Specifically, the following statutes are materially-similar to the MMPA such that they are identically violated by Defendant's conduct as forth herein:

*1)* Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, *et seq.;*
*2)* Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.;*
*3)* Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
*4)* Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
*5)* Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
*6)* Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
*7)* Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, *et seq.;*
*8)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. *et seq.;*
*9)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
*10)* Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.;*
*11)* Virginia Consumer Protection Act, Virginia Code Ann. § 59.1-196, *et seq.;*

("Consumer Protection Statutes")

137.    Accordingly, just as the MMPA has been violated by Defendant as alleged herein, each of the above Consumer Protection Statutes, all materially-similar to the MMPA, have also been violated by Defendants.

138.    Each of these Statutes is materially similar to the MMPA. Each broadly prohibits

---

[36] Although damages can be calculated readily by a layperson, Plaintiffs also will enlist the aid of appropriate expert witnesses to calculate damages to the utmost precision.

Electronically Filed - CITY OF ST. LOUIS - April 18, 2024 - 02:34 PM

deceptive conduct in connection with the sale of goods to consumers. No state requires proof of individualized reliance, or proof of Defendant's knowledge or intent. Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm. Defendant's conduct violates each statute's shared prohibitions.

139.    Plaintiff hereby re-incorporates herein the preceding facts that satisfy all of the various elements of each of the Consumer Protection Statutes.

140.    Each of the Consumer Protection Statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers.  Defendant's conduct violates each statute's prohibitions

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an order certifying this action as a Consumer Protection Subclass and/or Missouri Subclass class action, and appointing Plaintiff as Class and/or Subclass representative and his counsel as class and/or subclass counsel.  Plaintiff requests that this court find that the Defendant is liable pursuant to the aforementioned common law claims; and/or violated the MMPA and/or the Consumer Protection Statutes, and award Plaintiff compensatory damages, restitution, punitive damages, and attorneys' fees, and such further relief as the Court deems just, including injunctive relief.

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*